UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 10-21100-CIV-JORDAN

| | |
|---|---|
| DAVON L. OUTTEN, | ) |
|         Plaintiff | ) |
| vs. | ) |
| NCO FINANCIAL SYSTEMS, INC., | ) |
|         Defendant | ) |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

For the reasons stated below, NCO Financial Systems, Inc.'s motion for summary judgment [D.E. 40] and Davon L. Outten's motion for partial summary judgment [D.E. 41] are DENIED.

**I. LEGAL STANDARD**

A motion for summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *Accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). It must also "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

**II. FACTS**

In 2003 Mr. Outten applied for credit with Citibank [D.E. 43 ¶ 16]. Two years later, in 2005, Mr. Outten applied for credit with Providian [*Id.* ¶ 17]. Eventually Mr. Outten defaulted on payments to Citibank and CIGPFI (apparently a successor in interest to Providian), and NCO Financial began making calls to Mr. Outten's cell phone number.

There is a dispute as to whether Mr. Outten gave Citibank and Apex—another debt collector—his cell phone number as a contact number. Apex recorded that it received a letter from Mr. Outten giving his cell phone number as his contact number [D.E. 48 ¶¶ 5–6].

Mr. Outten, for his part, has denied ever giving his cell phone number to any creditor or debt collector. He further calls the letter received by Apex a forgery [D.E. 43 ¶ 15]. Regardless of whether Mr. Outten gave his cell phone number to Apex or Citibank, if he did, he did so after applying for credit with Citibank and Providian.

Beginning in February of 2009 and ending in November of 2009, NCO Financial made 240 calls to Mr. Outten's cell phone in an attempt to collect these debts [*Id.* ¶¶ 2–4]. These phone calls where made through an autodialing system [*Id.* ¶ 13].

### III. ANALYSIS

A plaintiff proves a violation under the Telephone Consumer Protection Act when he proves that the defendant made a "call (other than a call . . . made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). In other words, the plaintiff must show that someone used an automatic telephone dialing system to call his cell phone without his consent. In this case, there is a genuine dispute as to consent.

NCO Financial has evidence suggesting that Mr. Outten gave his cell phone number as a contact number to Citibank and that Mr. Outten sent a letter listing his cell phone number as his contact number to Apex. In contrast, Mr. Outten has introduced evidence that he never sent any letter and that he never gave his cell phone number to any of his debt-collectors. As a result, there is a genuine dispute about whether Mr. Outten consented to the phone calls.[1]

---

[1] I reject NCO Financial's argument that *Holster v. Gatco, Inc.*, 618 F.3d 214, 216 (2d Cir. 2010), allows defendants to raise state-law affirmative defenses in Telephone Consumer Protection Act cases. *Holster* says nothing of the sort. It merely iterates that states may decide which causes of action lie under the Telephone Consumer Protection Act. *See id.* at 218 ("The ability to define when a class cause of action lies and when it does not is part of [a state's] control. Exactly how far that control extends is not before us."). It does not mean, as NCO Financial asserts, that the Telephone Consumer Protection Act subsumes any common-law affirmative defense recognized by state law. *See Fillichio v. MRS Assocs.*, No. 09-cv-61629, 2010 U.S. Dist. LEXIS 112780, at *13 (S.D. Fla. Oct. 19, 2010).

Mr. Outten argues that, as a matter of law, prior express consent exists only if he expressly consents to autodialing. But the Federal Communications Commission has already issued guidance on this issue, stating: "[A]utodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *Rules & Regulations Implementing TCPA of 1991*, 23 F.C.C. Rec. 559, 559 (2008). *See also Gutierrez v. Barclays Grp.*, No. 10-cv-1012, 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011) (noting that one plaintiff gave prior express consent where he gave cell phone number as contact number in credit application).[2] According to the FCC, if someone gives her cell phone number to a debt collector, she has given prior express consent under the Telephone Consumer Protection Act.

Mr. Outten responds by quoting another sentence from the same pronouncement: "We emphasize that prior express consent is deemed to be granted *only if* the wireless number was provided by the consumer to the creditor, and *that such number was provided during the transaction that resulted in the debt owed*." *Rules & Regulations Implementing TCPA of 1991*, 23 F.C.C. Rec. at 564–65 (emphasis added). As a result, Mr. Outten argues, he "consented" if and only if he provided his number during the transaction that resulted in the debt. Here, Mr. Outten did not. Yet, as I noted above, three times, in broad language, the FCC states that, where a called party gives a debt collector or creditor its cell phone number, the called party has given prior express consent.[3]

---

[2]For an unknown reason, both NCO Financial and Mr. Outten treat *Rules & Regulations Implementing TCPA of 1991* as controlling and dispositive. Neither party discussed what deference a court owes that pronouncement. A few district courts have given this pronouncement deference under *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See, e.g.*, *Santino v. NCO Fin. Sys.*, No. 09-cv-982, 2011 WL 754874, at *4 (W.D.N.Y. Feb. 24, 2011). The FCC's pronouncement, called a "declaratory ruling" by the FCC, does not constitute a rule under the Administrative Procedure Act. *See* 28 U.S.C. § 551(4) (defining "rule"). And although the pronouncement appears to be an order formed through adjudication, as the APA defines those terms, neither party briefed the issue. *See id.* § 551(6)–(7). Regardless, even under the more limited deference pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), I find the FCC's pronouncement persuasive.

[3]First, the FCC states, "[W]e clarify that autodialed . . . calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *Rules & Regulations Implementing TCPA*

Thus, there is some tension between the language quoted by Mr. Outten and the language in the rest of the ruling.

I find the sentence quoted by Mr. Outten ambiguous. Read as Mr. Outten suggests, the sentence lacks parallel construction. When parsed, the sentence becomes incoherent. Mr. Outten's interpretation of the sentence reads as follows: "[P]rior express consent is deemed to be granted only if . . . that such number was provided during the transaction that resulted in the debt owed." *See id.* That said, a reading of the sentence based on parallel construction makes little sense as well.[4] Hence, the sentence on which Mr. Outten relies in *Rules & Regulations Implementing TCPA of 1991* is unclear.

The FCC's three previous statements (if a called party provides his cell phone number to debt collectors, he has given the debt collector prior express consent to being called at that number) are clear, however. I find that, to give prior express consent, a called party need not give consent during the transaction that resulted in the debt. Imagine, for example, a scenario in which a party sends a letter or e-mail asking a creditor to call him on his cell phone instead of at home or at work. According to Mr. Outten's argument, the creditor, once it called the cell phone, would violate the Telephone Consumer Protection Act, despite the written consent. At least one other court has agreed with this assessment. *See Pugliese v. Prof'l Recovery Serv.*, No. 09-cv-12262, 2010 WL 2632562, at *7–8 (E.D. Mich. June 29, 2010).

Since NCO Financial has introduced evidence showing that Mr. Outten gave consent (by giving his cell phone number to Citibank and writing a letter to Apex), a reasonable jury can infer (if it credits this evidence) that Mr. Outten gave NCO Financial express permission to call his cell

---

*of 1991*, 23 F.C.C. Rec. at 559. Next, it finds that, "[b]ecause we find that autodialed . . . calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, we clarify that such calls are permissible." *Id.* at 564 (footnote omitted). Lastly, the FCC proclaims that it "conclude[s] that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Id.* (emphasis omitted).

[4]"We emphasize . . . that such number was provided during the transaction that resulted in the debt owed." *Id.* at 564–65.

phone. On the other hand, a reasonable jury can reject such evidence and believe Mr. Outten's testimony that he never gave his cell phone number to his creditors. A genuine dispute as to a material fact exists, and summary judgment is therefore inappropriate.[5]

### IV. CONCLUSION

For these reasons, NCO's motion for summary judgment [D.E. 40] and Mr. Outten's motion for partial summary judgment [D.E. 41] are DENIED

DONE and ORDERED in chambers in Miami, Florida, this 26th day of April, 2011.

_____
Adalberto Jordan
United States District Judge

Copy to: All counsel of record

---

[5] The consent issue alone defeats NCO Financial's motion for summary judgment. But, in its response to Mr. Outten's motion for partial summary judgment, NCO Financial raises an agency issue that could make summary judgment for Mr. Outten appropriate. The issue concerns NCO Financial's authority to use the consent given by Mr. Outten to Citibank and Apex. NCO Financial asserts that Mr. Outten's consent flows to NCO Financial. Mr. Outten disagrees. But the factual basis for this argument is not found in either Mr. Outten's statement of material fact or NCO Financial's response to that statement of material facts. NCO Financial, instead, raises new facts in its response memorandum. I refuse to consider these new facts, for NCO Financial failed to state these facts in its response to Mr. Outten's statement of material facts. See S.D. FLA. L.R. 7.5(c). And without facts to apply to the issue, I cannot determine whether summary judgment is appropriate on that issue.